NATALIE K. WIGHT, OSB #035576
United States Attorney
District of Oregon
**LEAH K. BOLSTAD, OSB #052039**
Assistant United States Attorney
Leah.Bolstad@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:21-cr-00413-HZ-01** |
| **v.** | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **THOMAS EDWARD GREEN III,** | |
| **Defendant.** | |

From April 2020 through September 2021, defendant straw purchased nineteen (19) firearms. During the course of this scheme, defendant's twin brother and co-defendant Edward Green purchased sixty-four (64) firearms. Defendant had none of these firearms when arrested. Instead, many of the firearms he purchased ended up in the very wrong hands of violent criminals, some from his own Portland gang set, the Unthank Park Hustlers. Many of the firearms he purchased have yet to be recovered. Because of the incredible danger posed by his protracted offense conduct and his leadership role in encouraging and inciting gang violence, this

Court should impose a low-end guideline sentence of 30 months' imprisonment followed by three years of supervised release.

## I. The Offense Conduct

From May 2020 through September 2021, defendant purchased nineteen (19) firearms. Of the 19 firearms defendant purchased, seventeen (17) were from FLFD No. 1, a Federal Firearms Licensee (FFL) in Gresham, Oregon. Overall, he spent $6,424.00 on firearm purchases. Co-defendant Edward Green purchased sixty-four (64) firearms in the same time period. A total of twelve (12) firearms purchased by defendants have been recovered by law enforcement.[1]

For Count 1, on May 6, 2020, defendant paid $700 in cash to purchase two firearms from FLFD No. l - (1) a 9mm Glock 17 pistol (SN SCY415), and (2) a .40 caliber Taurus pistol (SN SND64654). In filling out the Form 4473, defendant answered "Yes" to question 11.a - "Are you the actual transferee/buyer of the firearm(s) listed on this form? Warning: you are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you."[2] On August 30, 2020, a shooting occurred at SE 130th and SE Stark. PPB officers approached a shot-up vehicle in the Portland Adventist parking lot and recovered three firearms inside, including the 9mm Glock 17 (SN SCY415).[3] They found a spent shell casing in the passenger seat area that had been fired

---

[1] According to the criminal complaint, law enforcement has recovered 12 firearms, including a .40 caliber Glock 23 (SN EYW721) recovered from a Hoover Criminal Gang member T.K. during an August 30, 2021 traffic stop.

[2] The form 4473 provides another warning on page 2 specifically addressed to this question 11.a: "I understand that answering "yes" to question 11.a if I am not the actual transferee/buyer is a crime punishable as a felony under Federal law, and may also violate State and/or local law."

[3] The other two firearms recovered were purchased by co-defendant Edward Green on May 18,

from the 9mm Glock 17 (SN SCY415). Neither defendant was present when these firearms were recovered.

For Count 7, on July 12, 2021, defendant paid $700 in cash to purchase two firearms from FLFD No. 1 - (1) a .40 caliber Glock 22 pistol (SN FLA555), and (2) a .40 caliber Glock 22 pistol (SN HYN957). In filling out the Form 4473, defendant answered "Yes" to question 11.a - "Are you the actual transferee/buyer of the firearm(s) listed on this form? Warning: you are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you." After the background check passed, FLFD No. 1 transferred the firearms to defendant on July 19, 2021. Four days later, on July 23, 2021, police recovered the .40 caliber Glock 22 pistol (SN FLA555) from convicted felon C.M., an Unthank Park Hustler gang member with multiple prior felony convictions for shootings, including Attempted Murder.

For both Counts 1 and 7, defendant knew he was making a false statement when he answered “Yes” to Question 11.a because he was transferring firearms to others, including prohibited persons. When arrested for these straw purchase crimes in September 2021, agents searched defendant’s residence and found none of the 19 firearms. They asked him where the firearms were, and he said they may be at the Lillyben residence or at his grandmother’s, but he refused to take investigators to the firearms. PSR ¶ 24. He never reported a single firearm stolen. The false statements on the Form 4473 were material, as explicitly described in the form 4473 – the FFL may not transfer a firearm to a buyer who is acquiring the firearm for another person. In

2020 (Count 18) and August 13, 2020 (Count 23). One of these was recovered from a male passenger C.W., a known Unthank Park Hustler and associate of both defendants.

other words, the statement is material because without a "Yes" answer, the FFL will not transfer the firearm.

Defendant engaged in firearms trafficking, and by plea he stipulated to the associated 4-level increase. Factually, defendant purchased 19 firearms but possessed none of them at his arrest, and never reported or suggested that any had been stolen. Instead, some have been recovered in possession of others, including convicted felon gang associates. Thus, defendant transferred or disposed of two or more firearms to other individuals. Additionally, based on the investigation, it is apparent that defendant knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual whose possession or receipt of the firearm would be unlawful; or who intended to use or dispose of the firearm unlawfully. U.S.S.G. § 2K2.1, Application Note 13. These firearms were transferred to, and in some instances recovered from, Unthank Park Hustler gang members and associates who were known to be felons convicted of violent crimes. As UPH members, they are expected to engage and do engage in shootings of rival gang members, i.e., use firearms unlawfully.

Defendants are self-admitted UPH members who frequently posted rap videos on social media that encouraged and praised gang shootings of rivals. PSR ¶ 23. In one video posted in December 2020 – Str8 2 It (screenshot below) – the footage shows defendants wearing UPH colors red and green, holding firearms, in their home on SW Lillyben residence, with other armed UPH members like C.W. and I.H.[4]

[4] These are the same C.W. and I.H. from whom law enforcement seized firearms purchased by co-defendant Edward Green, as alleged in the counts of his conviction, Counts 23 and 26. GREEN_0001402-03.




The lyrics are about being a gang member and committing shootings – "*catching bodies like it's a hobby*." Defendant Thomas Green III raps, "*Four gang full of shooters and I love them to death*," as he points to the armed UPH members like co-defendant Edward Green flaunting bandanas and firearms towards the camera. Investigators know that "four gang" is a reference to the Unthank Park Hustlers.

/ / /

/ / /

/ / /

/ / /




In another rap video entitled "Bang Bang" (see above) and posted by the defendants as one of their "Official Videos" in 2019, multiple UPH members, including co-defendant Edward Green, are shown holding and pointing firearms. Lyrics include "*plotting a murder we itchin for bodies,*" and "*bullets be flippin when I got the stick,*" and "*accurate with these weapons I aint missin with the semi.*" GREEN_0001404. Such videos encourage and praise gun violence, taunt rivals, and tend to breed more gun violence.

On May 12, 2021, an unknown assailant shot twelve rounds into the Green brothers' Lillyben residence in Gresham, Oregon, the same residence featured in their December 2020 posted rap video. GREEN_0000271 (Complaint). Nine days later, a shootout occurred at this residence during which a drive-by shooter shot fourteen (14) rounds into the house. After the

driver fled the scene, an unidentified occupant inside the home fired approximately thirty (30) rounds through the front walls, window, and door, spraying the street and neighboring homes with bullets. GREEN_0000271 (Complaint). A subsequent search of the home revealed nine empty gun cases, receipts for gun purchased made by the defendants, and hundreds of spent cartridge casings.

## II. The Charges & Guilty Plea

On October 21, 2021, a federal grand jury returned an indictment charging defendant and his twin brother with forty-one (41) counts of Straw Purchasing Firearms, in violation of 18 U.S.C. § 922(a)(6). ECF No. 1. Some of these counts involved the purchase of multiple firearms at one time. For example, in Count 35, the co-defendant purchased seven firearms at one time. On June 23, 2023, defendant pled guilty to Counts 1 and 7 pursuant to a plea agreement. ECF No. 107.

## III. Guideline Computations

The Probation Office prepared a presentence report, and the government agrees with the calculations therein. By plea, the defendant stipulated to a base offense level 14 and a 4-level increase for "trafficking of firearms" pursuant to 2K2.1(b)(5). Plea ¶ 8; PSR ¶¶ 30, 32. The parties stipulated defendant's relevant conduct involved at least 8 but fewer than 25 firearms, justifying a 4-level increase. PSR ¶ 31; U.S.S.G. § 2K2.1(b)(1). After a 3-level reduction for acceptance, defendant reaches a Total Offense Level (TOL) 19, and CHC I, for an advisory guideline range of 30-37 months' imprisonment.

/ / /

/ / /

Consistent with the plea agreement, the government recommends a low-end sentence of 30 months' imprisonment, followed by a three-year term of supervised release. Probation also recommends a 30-month sentence. PSR Sentencing Recommendation at 1.

## IV. Government's Recommended Sentence

The government recommends as a reasonable sentence under the 3553(a) factors a sentence of 30 months' imprisonment. A 30-month sentence promotes respect for the law, acts as a deterrent, and provides just punishment for the offense. Defendant bought firearms for others, including his fellow gang members, and he did so knowing that they are expected to use firearms to shoot at rivals. He agrees he engaged in the "trafficking" of firearms. His conduct endangered countless lives, and he knew it. The 30-month sentence recommended by the government aims to deter similar conduct from those willing to buy guns intended to be used in this ongoing and devastating gang violence.

Defendant's below-guideline sentencing recommendation is not warranted in this case. This is because these advisory guidelines, as they currently stand, do not account for the terrible harm resulting from the offense conduct. There is no increase in base offense for a straw purchased firearm that was used in a shooting. There is no specific offense characteristic that accounts for the reasonably foreseeable consequences of the offense conduct. Instead, these guidelines start straw purchasers at BOL 14, then count firearms and punish "trafficking" with a 4-level increase. Thus, it is the government's position that a sentence any lower than these arguably inadequate guidelines would fail to fairly punish the offense and the natural consequences of the offense conduct. This defendant bought 19 firearms that he transferred to others. He knew these individuals were either prohibited from purchasing firearms themselves or

they were going to use these firearms unlawfully. Indeed, by his own rap videos, he encouraged gun violence and shooting at rivals. Therefore, a guideline sentence is sufficient, but it is not greater than necessary to punish this conduct.

## V. Conclusion

Based on the foregoing, the government recommends that this Court impose a sentence of 30 months' imprisonment followed by a three-year term of supervised release, subject to the mandatory, standard, and special conditions proposed by the Probation Office, and a $100 statutory fee assessment.

Dated: October 4, 2023

Respectfully submitted,

NATALIE K. WIGHT
United States Attorney

*/s/ Leah K. Bolstad*
LEAH K. BOLSTAD, OSB #052039
Assistant United States Attorney